# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 1:12-cr-00255 |
| | ) | |
| v. | ) | Honorable Liam O'Grady |
| | ) | |
| CONCEPCION BENITEZ-PINEDA, | ) | Sentencing Hearing: April 5, 2013 |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America, by and through its counsel, Neil H. MacBride, United States Attorney, and Sean P. Tonolli, Assistant United States Attorney, respectfully submits this position on sentencing. For the reasons discussed below, the government requests that the Court sentence the defendant to a term of imprisonment of 87 months, which is the low-end of the applicable guidelines range. Such a sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a). The government does not seek a fine in this matter. However, a $200 mandatory special assessment is required.

## BACKGROUND

The defendant was arrested on May 10, 2012, along with over thirty co-conspirators. The grand jury first returned an indictment charging her on June 14, 2012, and returned the final superseding indictment on September 27, 2012. This final indictment charged her with three counts: conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963; conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h). The trial date was January 14, 2013. Less

1

than two weeks before trial commenced, the defendant entered her guilty plea on January 2, 2013, to the conspiracies to distribute cocaine and commit money laundering.

In accordance with Section 6A1.2 of the Guidelines and Policy Statements and this Court's policy regarding Guideline sentencing, the United States hereby represents that it has reviewed the Probation Office's presentence report ("PSR") prepared in this matter. The government does not dispute any of the sentencing factors set forth in the presentence report or the Probation Office's calculation of the recommended Guidelines range, to include that the defendant has earned the benefit of the safety-valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Accordingly the government's position is that the advisory guidelines range should be 87 to 108 months.

Given the Court's in-depth familiarity with the workings of the conspiracy and the defendant's specific involvement, the government will not reiterate all the underlying facts. Instead it will summarize her conduct and then place it in context with that of her most similarly situated co-defendants.

The defendant was Samuel Benitez-Pineda's ("Samuel") significant other, and it is through him that she became involved in the conspiracy. For several years she played a supportive, though important, role. She drove him to and from drug deals and to pick up money; delivered cocaine on his behalf when he was not available; picked up shipments of cocaine from couriers; and wired thousands of dollars of proceeds back to sources of supply in Honduras. Samuel did not force or otherwise coerce or trick the defendant into joining the conspiracy. She is a strong-willed and intelligent person, as the Court no doubt observed throughout the pendency of this case, and she knowingly joined for a straightforward reason: to make more money for herself and to support her daughter in Honduras.

So it was that in April 2012 she decided to start playing a larger role within the conspiracy because, in her view, Samuel was throwing money away by accepting low-quality cocaine from Honduras and fronting it in large quantities to his less-than-reliable sub-distributors who owed him tens of thousands of dollars. The defendant did this by reaching out to her ex-husband in Honduras to establish a supply line for better and less expensive cocaine imported directly from Colombia. She brought Samuel and Jose Delcid in on the plan, and together they were able to obtain cocaine from her ex-husband that was distributed by the conspiracy within the United States. One of their couriers was caught on April 20, 2012, with over one kilogram at George Bush Intercontinental Airport in Houston, Texas. Because law enforcement arrested her in mid-May, the defendant was directly involved with importation for approximately one month.

In its totality, the defendant's conduct most closely approximates that of Jose Benitez-Pineda, Genis Amaya-Pena, and Wilson Guevara, who are the other co-defendants who pleaded guilty to conspiracy to distribute five kilograms or more and earned the safety-valve. They all were primarily street-level dealers who became directly involved in importation, though to a much lesser degree and for a shorter period of time than people like Samuel and Delcid. Genis and Wilson entered pre-indictment guilty pleas, and Jose pleaded guilty soon after the final superseding indictment was returned. Because of their early pleas, none were required to plead guilty to conspiracy to commit money laundering. They are all illegal aliens who face removal from the United States due to their convictions.

They each faced an advisory guidelines range of 70 to 87 months. The Court sentenced Jose to 60 months, Genis to 70 months, and Wilson to 72 months. Jose received a downward variance of 14% because of his young age, his heavy addiction to cocaine, and the fact that he took approximately one year off from the conspiracy while on the run in Chicago from drug

charges in Fairfax County. Wilson, who was one of the first defendants to plead guilty, received a sentence slightly higher than the low-end because, among other reasons, he took a trip to Honduras where he purchased and packaged for importation one kilogram of cocaine. Like the defendant, while involved in the conspiracy he also maintained full and legitimate employment.

## ARGUMENT

Even though the Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 125 S. Ct. 738, 767 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553 states that the Court should consider the nature and circumstances of the offense and characteristics of the defendant. The Court must also consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). In addition, the sentence should protect the public from further crimes of the defendant and provide the defendant with needed correctional treatment. *Id*. § 3553(a)(2)(C) & (D). Finally, the sentence should address "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. § 3553(a)(6).

The crimes for which the defendant stands convicted unquestionably are serious, as the trafficking of cocaine imposes enormous costs on individuals, families, and the community,

4

including the costs associated with law enforcement, corrections, medical treatment, and substance abuse treatment. Indeed, Congress has determined that trafficking in five kilograms of cocaine generally should, by itself, subject a defendant to at least a period of incarceration of 120 months. In light of that, the government submits that a sentence of 87 months, which is at the low-end of the guidelines range, will reasonably and appropriately account for all the factors set forth in 18 U.S.C. § 3553(a). Such a sentence would provide significant deterrence for this defendant, provide for protection of the public, and communicate the seriousness and dangerousness of this offense to the public and to others engaged in similar criminal conduct.

Sentencing the defendant within her guidelines range would also prevent an unwarranted disparity between her and those defendants most similarly situated to her. As discussed above, Jose Benitez-Pineda, Genis Amaya-Pena, and Wilson Guevara entered early pleas and pleaded guilty only to the five kilogram distribution conspiracy, thus resulting in a lower guidelines range. Two of the three received sentences within that guidelines range, and the other received a 14% downward variance primarily because his involvement in the conspiracy was due to his young age and addiction to cocaine. But even he received a sentence of 60 months. The defendant, however, requests an even lower sentence of 48 months, which constitutes an almost 50% downward variance, despite that she is almost 40 years old and did not abuse drugs, and that she waited until the brink of trial to accept responsibility and in doing so pleaded guilty to an additional crime of conspiracy to commit money laundering. The government opposes this request and submits that any variance, and particularly the large variance the defendant has requested, is unwarranted.

## CONCLUSION

For all of the above reasons, the United States respectfully submits that a term of imprisonment of 87 months would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

NEIL H. MACBRIDE
United States Attorney


\_/s/_____
SEAN P. TONOLLI
Assistant United States Attorney
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-837-8242
Email: sean.tonolli@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of April, 2013, an electronic copy of the foregoing pleading was provided to the United States Probation Officer and filed electronically using the CM/ECF system, which will send a notification of such filing (NEF) to the defense counsel of record, Jerome P. Aquino.

Respectfully submitted,

_/s/_____
SEAN P. TONOLLI
Assistant United States Attorney
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-837-8242
Email: sean.tonolli@usdoj.gov